IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Catlin Specialty Insurance Group, | ) | Civil Action No. 2:16-3135-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| RFB, Inc. *d/b/a Max & Henry's a/k/a* | ) | |
| *Henry's Sports Bar*, Frank Clyburn, *and* | ) | |
| Jess Bess, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiff Catlin Specialty Insurance Group's motion for summary judgment. For the reasons set forth below, the Court grants the motion.

I. **Background**

Defendant Jesse Bass alleges that on December 6, 2012, Cedrick Price, a bouncer at a bar owned by Defendant Frank Clyburn and Defendant RFB, Inc. (together, "Henry's"), struck him with force sufficient to knock him unconscious and to inflict serious brain injury. (Dkt. No. 1-1 ¶ 23.) The bouncer was employed by Elite Security Services LLC, a business that provides nightclub security services. (*Id.* ¶ 14.) On June 15, 2015, Mr. Bass filed a federal lawsuit against Henry's, Elite Security, and Mr. Price. *Bass v. RFB, Inc.*, Civ. No. 2:15-2410-RMG. In that matter, claims against Elite Security have settled and Mr. Price is in default. Regarding Henry's, Mr. Bass asserts a claim of negligence, alleging Henry's breached its duty to exercise reasonable car in the hiring, supervision, and retention of Elite Security.

Plaintiff Catlin Specialty Insurance Group issued a commercial general liability ("CGL") policy to Henry's that was in effect at the time of the incident. (Dkt. No. 1-2.) Catlin is defending Henry's in the underlying lawsuit, subject to a reservation of rights. The policy limit is $1 million

per occurrence. (*Id.* at 8.) It, however, has an Assault and Battery Endorsement that sets a sublimit of $25,000 per occurrence. (*Id.*) On September 16, 2016, Catlin filed the present action seeking a declaration that the Assault and Battery Endorsement applies to Mr. Bass's claim against Henry's. (Dkt. No. 1.) The underlying litigation has been stayed pending resolution of the present action.

## II.  <u>Legal Standard</u>

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. Discussion

The sole question before the Court is whether the CGL policy's assault and battery sublimit applies to December 6, 2012 incident in which Mr. Bass was injured. The sublimit applies to claims for bodily injury, personal injury, advertising injury, or property damage

> arising from an assault and battery or out of any act or omission in connection with the prevention, suppression, or failure to protect or suppress such acts including the failure to warn, train, or supervise, whether caused by or at the instigation or direction of the insured, his employees, patrons, or other person.

(Dkt. No. 1-2 at 6.) In South Carolina, an assault is conduct that places another "in reasonable fear of bodily harm," and a battery is "the actual infliction of any unlawful, unauthorized violence on the person of another." *Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008). Mr. Bass alleges he was struck in the head, knocking him unconscious by Mr. Price. (Dkt. No. 1-1 ¶ 23.) Witnesses to the incident have averred likewise. (Dkt. Nos. 31-2 & 31-3.) Mr. Bass has testified that he was "attacked." (Dkt. No. 23-2 at 3.) There is no genuine dispute that Mr. Bass's alleges his injuries arise from an assault and battery that occurred on December 6, 2012.

Mr. Bass indeed does not contest that Mr. Price battered Mr. Bass, but he sue Henry's for negligence, not the intentional torts of assault and battery. (Dkt. No. 1-1.) That is a common pleading practice. Insurers who insure bars are reluctant to insure the bar against liability for barroom fights or for the actions of bouncers. In response, plaintiffs often attempt to plead into coverage by asserting negligence—attempts federal and state courts routinely reject. *See, e.g., Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 93 F.3d 63, 66 (2d Cir. 1996); *Scottsdale Ins. Co. v. Moonshine Saloon, LLC*, No. 2:16-CV-0797-DCN, 2017 WL 68794, at *4 (D.S.C. Jan. 6, 2017); *Mt. Vernon Fire Ins. Co. v. Dobbs*, 873 F. Supp. 2d 762, 767 (N.D.W. Va. 2012); *Versatility, Inc. v. Capitol Indem. Corp.*, No. 2:10-942-JCM-PAL, 2011 WL 3444187, at *3 (D. Nev. Aug. 5, 2011); *Downtown Norfolk Entm't, Inc. v. Penn-Am. Ins. Co.*, 660 F. Supp. 2d 669,

675 (E.D. Va. 2008); *St. Paul Reinsurance Co. v. Ollie's Seafood Grille & Bar, LLC*, 242 F.R.D. 348, 351 (D.S.C. 2007), *aff'd sub nom. St. Paul Reinsurance Co. v. Riviello*, 296 F. App'x 377 (4th Cir. 2008); *Kamaki Skiathos, Inc. v. Essex Ins. Co.*, 396 F. Supp. 2d 624, 629 (D. Md. 2005); *Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1088 (D. Nev. 1999); *Hermitage Ins. Co. v. Dahms*, 842 F. Supp. 319, 326 (N.D. Ill. 1994); *Eady v. Capitol Indem. Corp.*, 502 S.E.2d 514, 516 (Ga. Ct. App. 1998); *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993); *Capitol Indem. Corp. v. Callis*, 963 S.W.2d 247, 250 (Mo. Ct. App. 1997); *Berg v. Schultz*, 526 N.W.2d 781, 783 (Wis. Ct. App. 1994).

Those cases express two principles that apply fully to the present case. First, "[a]lthough the injuries may have been caused by the negligent acts of the defendant, that does not necessarily mean that they did not arise out of an assault and/or battery." *Callis*, 963 S.W.2d at 250. Second, plaintiffs "cannot mischaracterize intentional acts as negligence claims in order to avoid the exclusions contained within the insurance policy." *Dobbs*, 873 F. Supp. 2d at 766. In this case, even if Henry's was negligent, and even if that negligence proximately caused Mr. Bass's injuries, Mr. Bass's injury nonetheless arises out of an alleged battery. Mr. Bass cannot avoid a policy sublimit by mischaracterizing Mr. Price's admittedly intentional act as negligence. Simply put, if a sublimit for injuries arising from an assault and battery does not apply to punching a man in the head intentionally during a fight at a bar, then it is difficult to imagine when it would ever apply.

In opposition to summary judgment, Mr. Bass argues that "assault and battery" is ambiguous because the insurance policy does not define those terms. (Dkt. No. 31 at 4.) That argument is without merit. The terms assault and battery are well defined under South Carolina law and Mr. Bass apparently agrees with Catlin about the definition of those terms. (*Compare*

Dkt. No. 23-1 at 6 (Catlin citing *Mellen v. Lane*, 659 S.E.2d 236 (S.C. Ct. App. 2008) to define assault and battery) *with* Dkt. No. 31 at –45 (Mr. Bass citing *Mellen* to define assault and battery).

Mr. Bass also argues that there is a question of disputed material fact about whether Mr. Bass's injuries arose from a battery. (Dkt. No. 31 at 5.) Mr. Bass points out that a battery requires "unlawful, unauthorized violence" and he counterintuitively argues that here is a disputed factual question about "whether the striking of Mr. Bass was unlawful or unauthorized." (*Id.*) Again, that argument is without merit. If Mr. Bass alleges Mr. Price acted in a lawful, legally authorized manner when he struck Mr. Bass, then he breached no duty owed Mr. Bass and neither Mr. Price nor his employer is liable for the resulting injury to Mr. Bass. If Mr. Bass does not allege Mr. Price acted lawfully, then there is no factual dispute. Moreover, in the underlying litigation Mr. Bass has alleged Mr. Price acted unlawfully. (Dkt. No. 1-1 ¶ 24 (alleging Mr. Price's actions were "done with reckless disregard for Plaintiff's rights").) Mr. Bass is estopped from arguing the opposite position in this coverage litigation.

Mr. Bass further argues the sublimit itself is ambiguous because it provides a $25,000 each occurrence and $50,000 aggregate limit for claims arising from assault and battery and states "[t]his aggregate limit is included in and not in addition to the policy General Aggregate Limit." (Dkt. No. 31 at 7.) According to Mr. Bass, that fails to state that the $25,000 each occurrence limit is not in addition to the policy's $1,000,000 general limit for each occurrence. That argument, again, is without merit. The sublimit is perfectly clear: "The Limit of Insurance for this coverage is $25,000 each occurrence and $50,000 aggregate for the policy." (Dkt. No. 1-2 at 6.)

Finally, Mr. Bass argues summary judgment is inappropriate because discovery is not yet complete—in particular, Mr. Bass has not deposed Catlin's corporate representative. Often that would be a compelling argument, but not in the present case. Mr. Bass's injuries manifestly arise

from an assault and battery, and so his claim for damages for those injuries arises from an assault and battery even if his lawyers plead it as a negligence claim. Further discovery cannot change that.

Henry's argues that summary judgment should be denied because it was not "adequately notified" of the assault and battery sublimit. (Dkt. No. 32 at 2.) Henry's does not argue that it did not have actual notice of the policy limitation. Rather, Henry's argues it was not "notified" that an assault and battery limitation on coverage could apply to claims arising from an assault and battery even if those claims are artfully pleaded as negligence. (*See id.* at 2–3.) That argument is, of course, without merit. To the extent Henry's means to argue that the policy limit is unenforceable because it renders the policy meaningless, its argument fails because the policy covers a great many risks other than assaults and batteries by employees or patrons—*e.g.*, slip-and-fall claims. Courts have held exclusions unenforceable because they would render an insurance policy virtually meaningless only where the insurer attempts to exclude virtually all claims that might arise from the insured's activities. *See, e.g., Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 321 (S.C. Ct. App. 1994).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment (Dkt. No. 23) and **DECLARES** that under the assault and battery endorsement of commercial general liability policy 3900100991, in effect from August 22, 2012 to August 22, 2013, Plaintiff Catlin Specialty Insurance Company is not obligated to indemnify Defendant RFB, Inc. and Defendant Frank Clyburn for any amount above $25,000 with respect to the claims in *Bass v. RFB, Inc.*, et al., Civ. No. 2:15-2410-RMG. All other pending motions are **DENIED AS MOOT**.

**AND IT IS SO ORDERED.**

                                                           _____
                                                           Richard Mark Gergel
                                                           United States District Court Judge

June 8, 2017
Charleston, South Carolina